AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of Illinois

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 19-MJ-6037 |
| | ) |
| | ) |
| Peter E. Miller | ) |
| *Defendant(s)* | |

FILED
MAR 21 2019
CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 29, 2019__ in the county of __Peoria__ in the __Central__ District of __Illinois__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) | did knowingly possess child pornography, as defined in Title 18, United States Code, Sections 2256(8)(A) and (B), including one or more visual depictions involving a prepubescent minor or a minor under twelve years of age, said child pornography having been mailed, shipped or transported in or affecting interstate and foreign commerce, and using any means or facility of interstate or foreign commerce, including by computer, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2). |

This criminal complaint is based on these facts:

See attached Affidavit

☒ Continued on the attached sheet.

s/ Scott Gamboe
*Complainant's signature*

TFO Scott Gamboe, USSS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/21/2019

s/ Jonathan E. Hawley

*Judge's signature*

City and state: Peoria, Illinois

Johnathan E. Hawley, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

I, Special Federal Officer Scott Gamboe, having been duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a detective with the Peoria County Sheriff's Department, located in Peoria, Illinois and have been employed there from June 1998 to present. I am also a Special Federal Officer through the sponsorship of the United States Secret Service (USSS). I am a member of the United States Attorney's Office Central Illinois Cyber Crime Unit based in Peoria, Illinois. I have received extensive training in criminal investigations, computer crime investigations, computer and electronic device forensic exams, identity theft, fraud, and child pornography investigations. I have conducted numerous investigations, state and federal, involving computer crimes, identity theft, fraud, and child pornography resulting in arrests and seizures. I have also been involved in the execution of numerous search warrants. In addition, I am an EnCE certified computer forensic examiner and a CCPA certified mobile device examiner. I hold a BA in Criminal Justice from the University Of Illinois – Springfield.

2. As a Special Federal Officer, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States. During such investigations, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have been involved in numerous child pornography investigations

and am very familiar with the tactics used by child pornography offenders who collect child pornographic material, and those who seek to exploit children.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for a complaint for Peter E. MILLER (being a white male with a date of birth of 04/18/1967, residing at 5018 Lake Camelot Drive in Mapleton, Illinois, which is in the Central District of Illinois) with 18 U.S.C. §§ 2252A(a)(5)(B) (Possession of Child Pornography), I have not included every fact known to me concerning this investigation.

## DEFINITIONS

4. The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and Attachment B:

   a. "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(1).

   b. "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts

that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

c. "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d. "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

e. "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. It commonly includes programs to run operating systems, applications, and utilities.

f. "Internet Protocol Address" or "IP Address," as used herein, refers to a unique number used by a computer to access the Internet. IP Addresses can be "dynamic," meaning that the Internet service provider assigns a different unique number to a computer every time it accesses the Internet. IP Addresses might also be "static," if an Internet service provider assigns a user's computer a particular IP Address that is used each time the computer accesses the Internet. IP Addresses are registered to specific individuals or entities, such as an Internet service provider. When a subscriber of an Internet service

provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP Address which identifies that account holder on the Internet. By providing the Internet service provider with the dates, times and IP Addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP Address, at that date and time, if the records still exist on their system.

g. "Internet service providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, such as electrical, electronic or magnetic form (including, but not limited to, tape recordings, compact discs, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, or electronic notebooks, as well as digital data files from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS, DIGITAL MEDIA & CHILD PORNOGRAPHY

5. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, computers, computer technology, other digital electronic storage devices, and the Internet have revolutionized the manner in which individuals seek to access and exploit children, as well as their ability to produce, distribute, and collect child pornography. Moreover, with the advancement of so-called

"smart" mobile phones, which perform the same functions, and often employ the same programs, as computers, users are able to transport, conceal, and have almost constant access to the Internet. Smart phones also enable consistent and real-time communication over a number of electronic, audio, and video platforms.

6. Computers and other digital electronic media basically serve five functions in the realm of child pornography and child exploitation: production, communication, distribution, storage, and social networking.

7. Child pornographers can transpose photographic images from a film camera into a computer-readable format with a scanner. With digital cameras, the images can be transferred directly onto a computer, and other digital media. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

8. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution. In addition, electronic devices such as smart phones (e.g., Apple iPhones), connected devices (e.g., Apple iTouch), e-readers, and tablets (e.g., Apple

iPads, Kindle Fire) now function essentially as computers with the same abilities to store images and videos in digital form.

9. The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

10. Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer or device with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer or device. Even in cases where online storage is used, in most cases evidence of child pornography can be found on the user's computer or device.

11. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an email as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software,

among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

12. Because the attempted enticement and coercion of minors is illegal, as is the production, receipt, distribution, and possession of child pornography, individuals who seek sexual gratification from the exploitation of children must be cautious about their communications and online activity. An individual can use the computer or other digital electronic media in the privacy of his/her own home or office to locate and interact with other like-minded individuals, including individuals trading in child pornography. Moreover, an individual can do so without revealing his/her true identity. The use of computers and other digital electronic media devices provide individuals interested in child exploitation with a convenient method of storing their communications, information about the others with whom they communicate, and their child pornography collections.

13. Searches and seizures of evidence from smart phones, computers, and other digital devices commonly require agents to download or copy information from the device to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following three reasons:

> a. Computers, smart phones and computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. When the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the

search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b. Searching digital devices for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of available hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data.

c. The search of a computer system, and other digital devices, is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since this evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

### **Internet Protocol Address**

14. The Internet is a worldwide system of computer networks - a network of networks - in which users at any one computer can, if they have permission, get information from any other computer (and sometimes talk directly to other computer users).

15. An Internet Protocol address (also known as an IP address) is a set of numbers which identify a computer on the Internet. Standard IPV4 IP addresses follow the format of ###.###.###.###[1] wherein each of the numbers are between 0 and 255. Computers use IP addresses to identify each other on the Internet. Internet Protocol addresses are registered to specific individuals or entities, such as an Internet service provider.

---

1   As set in the protocol TCP/IP V4 which is the common usage today.

16.  When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP address which identifies that account holder on the Internet. By providing the Internet service provider with the dates, times and IP addresses which a suspect used to access the Internet, the Internet service provider will be able to provide the identifying information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.

## BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE

17.  On March 4, 2019, I spoke to LT Gregory Clampitt of the Illinois Air National Guard (IANG). LT Clampitt formerly served as a deputy with the Peoria County Sheriff's Department. He informed me that the IANG had requested my assistance in the investigation of the possible possession of images of child pornography contained on a U.S. Government-owned laptop computer.

18.  SMSGT Peter MILLER, a member of the IANG, had been assigned the HP laptop described in Attachment A. According to COL Cory Reid of the IANG, the laptop was assigned solely to MILLER. In order to access the computer, MILLER's identity card had to be inserted, and MILLER's password had to be entered. When the computer is first activated, a screen appears that declares the computer to be the property of the United States Government, and declares that the user has no right to privacy on the device. MILLER was authorized to remove the computer from the IANG base in Bartonville, IL, and take it to his residence. This computer does not contain classified information.

19. Continuing on March 4, 2019, I met with LT Clampitt, along with COL Cory Reid and others, at the IANG base in Bartonville, Illinois. LT Clampitt provided me with documentation on their investigation. Based upon LT Clampitt's report, MILLER turned the laptop over to MSGT Scott Swanson of the IANG because it had ceased functioning properly. Swanson works in the Network Communication Center (NCC).

20. MSGT Swanson discovered that the computer had been infected with malware. In his efforts to remove the malware, Swanson discovered image files he believed to contain child pornography. He informed COL Reid about his findings.

21. I spoke to MAJ Charles Schierer about the investigation. Schierer told me that as an attorney, he had both prosecuted and defended cases involving child pornography for a decade, and therefore could recognize images that met the federal definition for child pornography. Schierer said that he was contacted by COL Reid and was asked to examine the images himself. According to Schierer, the computer was located within a secure vault at the IANG base. MSGT Swanson activated the computer and showed Schierer the images, and Schierer confirmed that in his opinion, the images met the federal definition for child pornography. Schierer described two of the images as displaying nude females, approximately 8-10 years of age, with the focal point of both images being the females' exposed genitals.

22. LT Clampitt informed me that thousands of images had been located, but their examination stopped upon the discovery of images believed to contain child

pornography. The examination by MSGT Swanson and MAJ Schierer only included 100-150 images. These images included nude images of age-difficult females, as well as partially-clothed prepubescent females in "sexually suggestive" poses.

23.     On March 8, 2019, United States Magistrate Judge Jonathon Hawley signed a federal search warrant for the computer assigned to and possessed by MILLER. I executed the search warrant the same day.

24.     This computer was assigned solely to MILLER by the Illinois Air National Guard. My examination of this computer revealed that aside from the default user accounts set up by Windows during the installation of the operating system software, the only user account for the computer was the account assigned to MILLER. This user account is only accessible by inserting MILLER's magnetic secure access card and entering MILLER's password. Fifteen minutes of inactivity will lock the computer's activity until MILLER's password is reentered.

25.     During the course of my examination of the computer, I discovered hundreds of images of prepubescent children, which met the definition for Child Pornography (as defined in 18 U.S.C. § 2256), stored on the computer's internal hard drive. Many of these images were in "unallocated space," meaning that they had been deleted from the hard drive and were no longer contained within the "Recycle Bin" associated with the Windows operating system. These files are no longer accessible to the casual user, as forensic software is required to access them. However, nearly two

hundred images of child pornography were contained within a compressed folder on the hard drive, "$R08HHBF.mp4". The file extension on this compressed folder had been changed from ".rar" to ".mp4". This was likely an attempt to conceal the images from the casual observer, as anyone attempting to access the folder as an .mp4 file would have been unsuccessful.

26. The compressed folder was located in the Recycle Bin, in the folder assigned solely to the user account for MILLER, meaning the MILLER user account deleted the file. Based upon my forensic examination of the drive, this folder was owned by, and deleted by, MILLER's user account. This user account is only accessible when using both MILLER's magnetic secure access card and MILLER's password.

27. Examples of the images located within the file $R08HHBF.mp4:

   a. Image26.jpeg: This image depicts three nude children: a prepubescent female, a preteen female, and a preteen male. The male is sitting between the two females. The prepubescent female's nude breasts and vagina are visible in the image. The subjects have their arms around each other, and the two females are each touching the male's penis with a hand.

   b. Image174.jpeg: This image depicts a nude prepubescent female kneeling in front of a nude adult male. She has a hand touching his penis.

      c. Image165.jpeg: This image depicts a nude preteen female outdoors, on a towel. Her nude breasts, vagina, and anus are visible, and she has an object penetrating her anus.

      d. Image132.jpeg: This image depicts a prepubescent female (who is wearing only what appears to be a garter belt), with two nude adult females. The prepubescent female is using her hands to vaginally penetrate both adult females simultaneously.

28. In the Windows operating system, there is a file named "hyberfil.sys". This file is used by the operating system when a computer is placed into "hibernate" mode. Hibernate mode suspends operations for the computer, thereby conserving power, but enables the computer to resume operations significantly quicker than powering the computer off completely. In order to accomplish this, and to restore the computer to the previous working state, data is written to the hyberfil.sys file on the hard drive.

29. The hyberfil.sys file, therefore, contains information regarding the activities of the computer at the time that it was placed into hibernate mode. A forensic examination of this file can sometimes reveal information that is valuable to a forensic investigation of the device.

30. In this investigation, my examination of the hiberfil.sys file revealed an embedded image file, without displaying the filename for the image. This image, while lower resolution, depicted a collage of images that appeared to show a clothed

prepubescent female performing oral sex on the penis of an adult male. In order for this image to appear in the hyberfil.sys file, the image would have had to have been in the computer's memory (and therefore have been recently viewed) when the computer was placed into hibernation mode.

31.     On the "Desktop" assigned to the user account for MILLER, in the folder "mobility reg", I located the file "http.docx". The file extension ".docx" is typically associated with Microsoft Word, and is a compressed file. When opened in Microsoft Word, it reveals a two-page document. On the first page is an Internet link, "http://i2.wp.com/proxy.open.tips/". On the second page is an image of a nude female, who appears to be preteen. She is laying on her left side, facing away from the camera, with her nude genitals partially exposed. A watermark in the upper right corner of the image reads, "Magic Angels" and www.magic-angels.com. This file's attributes show the user account assigned to MILLER as the owner.

32.     When using the Firefox browser, a user is assigned a unique profile. This profile will retain the options and settings as established by only that user, and may also retain historical data, such as files, web locations, and "cookies," also solely for that user account. For the user account assigned to MILLER, in the location C:\Windows\Users\1088002845N\AppData\Local\Mozilla\Firefox\Profiles\j32pg9an.default\cache2\entries\20F11277975F28BA2A7E1A625324971872DC8A0, I discovered an

image for this user, which depicted a nude prepubescent female. The female was lying on a bed on her back, with her legs spread, displaying her nude vagina.

33. Using Axiom software, I located numerous search terms that had been used on this computer. Many of these terms are commonly associated with searches for files depicting images of child pornography, including these listed herein:

    a. In the Internet Explorer browser, on August 30, 2018 at 4:50 p.m., a search was made for "10-14 Girls On Stickam VK". Stickam is a live-streaming website that allows users to broadcast video, audio, and pictures of themselves.

    b. In the Internet Explorer browser, on September 12, 2018, at 4:35 p.m., a search was made for "10Y Girl Girl Having Sex". 10Y is a term referring to a female who is ten years of age.

    c. In the Internet Explorer browser, on August 8, 2018, at 2:32 p.m., a search was made for "3D Toddler Incest Hentai Comics". This indicates a search for cartoon images or computer-generated images, but still demonstrates the type of content being searched for (toddler and incest).

    d. In the Internet Explorer browser, on September 4, 2018, at 8:46 p.m., a search was made for "Cat Goddess Spread-Eagle". Cat Goddess is a name for a known series of child pornography.

34. According to documents sent to me by COL Steven Thomas of the Illinois Air National Guard (IANG), the computer was received by the IANG on 10/11/2017, and was assigned to MILLER on 1/24/2018. Based upon this paperwork, it appears that Miller was the only user assigned to this computer.

35. According to a report provided to me by LT Clampitt of the IANG, MILLER returned the computer to the IANG on January 29, 2019, complaining that it was not functioning properly. I located Administrator user account logins beginning on that date. Prior to January 29, 2019, MILLER's user account is the only user account for which I have found records of logins. All of the searches for terms commonly associated with child pornography happened prior to January 29, 2019. All images with "created on" dates show that they were received prior to January 29, 2019.

36. In order to log into MILLER's user account, there are two requirements: MILLER's magnetic key card must be inserted into the computer, and MILLER's password must be entered.

37. During the execution of the residential search warrant (infra, ¶38-40), I spoke to J.M. (Peter and Pamela Miller's oldest son), who is 18 years of age. He stated that he does not know the password to MILLER's computer, has not himself used MILLER's computer, and has not seen anyone but MILLER use that computer.

## RESIDENTIAL SEARCH WARRANT

38. On March 20, 2019, with other police officers and with agents of the U.S. Secret Service, I executed a federal search warrant on MILLER's residence at 5018 S. Lake Camelot Drive in Mapleton, Illinois, which is in the Central District of Illinois. During the execution of the search warrant, I learned that MILLER, his wife Pamela, and their youngest son were in Eustis, Florida.

39. We seized several electronic devices from the MILLER residence. As of the writing of this complaint, those devices have not been examined.

40. Agents of the U.S. Secret Service in central Florida traveled to MILLER's location. They gave him a copy of the residential search warrant. While there, they spoke to Pamela Miller. She told the agents that approximately ten years ago, she became suspicious that MILLER had sexually abused their oldest son, J.M. (who would have been approximately eight years of age at the time).

## CONCLUSION

41. The evidence listed above indicates that Peter E. MILLER has committed the offense of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B).

s/ Scott Gamboe

_____
SCOTT GAMBOE
Special Federal Officer

Subscribed and sworn to before me on March 21, 2019.

s/ Jonathan E. Hawley

_____
HONORABLE JONATHON HAWLEY
UNITED STATES MAGISTRATE JUDGE
CENTRAL DISTRICT OF ILLINOIS